Smith, J.
The following facts appear from the bill of exceptions':
1st. That John Kebler, on, and for some months prior to July 26, 1877, was the agent of the parties tp this litigation (both of whom were non-residents of, and absent from this state), for the purpose of investing for them, severally, money placed in his hands by them respectively, for'that purpose.
2d. On the 26th day of July,.1877, one Wm. Rankin executed and delivered to Kebler, a mortgage on certain real estate in this city, to secure the payment of two notes made by him to Kebler, one of which was dated Feb. 14, 1877, due in two years after its date and calling for $2,975.50, with interest from date at 8 per cent, per annum, payable annually, and the other for $3,200, dated July 2, 1877, due in two years after its date, with interest at 8 per .cent, payablé annually. Both were made payable to the order of Kebler.
3d.. On July 2,' 1877, as is shown by a letter of Kebler, dated July 26, 1877 (the day on which the mortgage was executed), addressed to Miss Cromwell, and which contained a statement of his account with -her brought down to July'2, 1877,-there was then in his hands of money of hér’s a balance of $3,231.50. In this letter he notifies her that he had invested for her, $3,200 in the Rankin note and mortgage of that amount as of July 2; 1887. There is no statement-when -that investment was made, but it müst be considered from all the circumstances that it was done at least as early as July 26, 1877, and it may be that it should date as of July 2,1877,; but th.ere is nothing definite to show that such was the case. He appears *263 to have retained this note in his possession until January 2, 1883, when he wrote to her a letter enclosing the note, in which he advised her that interest had been paid to her annually thereon in full up to July 2,1882 and says, “ I enclose that note duly endorsed to you.” It was endorsed when received by her as follows — “ Property of Miss Margaret Cromwell. Interest paid in full to July 2d, 1882. Pay Margaret Cromwell or order. John Kebler.” There is nothing to show when either of these endorsements was made.
4th. In December, 1876, Mrs. Brinton had placed in Kebler’s hands for investment over $8,500. He had invested a part thereof for her prior to Feb. 14,1877, and on that day ought to have held for her, as appears from his written statement after-wards made, about $2,975.50, which was the amount of the Rankin note of that date, and which, with the $3,200 note before mentioned, was afterward secured by the Rankin mortgage of July 26, 1877- On Dec. 24, 1877 he sent to her this note of $2,975.50, indorsed to her without recourse, stating that it had been made payable to his order for convenience. There is no direct evidence as to the time when the investment in this note was made for her; but if the note in question was executed on the day it bears date, there is strong reason to suppose that it was done at that time, for it was for th,e exact sum that should have been in his hands, and it not being a round sum, the coincidence between the two amounts and the fact that it was afterwards turned over to her, strongly tend to show that the investment was then made.
Supposing this to be so, it' then presents a case where Kebler having money in his hands to be invested for Mrs. Brinton, does so invest it on Feb. 14, 1877, in this note due in two years from that day, and having money of Miss Cromwell in his hands for á like purpose, invests that, either on July 2d, or July 26th, in the $3,200 note, on which last day a mortgage is given by the maker thereof to Kebler to secure both of the notes, and after this the mortgagee and payee turns over the notes to the parties for whom they were respectively purchased. And the mortgaged premises having been sold, and' the proceeds being insufficient to pay both of them in full, the question is, how shall the purchase money be applied as between the holders of the two notes.
*264 We think it entirely clear that if Kebler had been himself the owner of these notes in his own right, at the time the mortgage was made, and had thereafter transferred them to these persons, that Mrs. Brinton, as the owner and holder of the note which was first to mature, was entitled to be first paid, and this without regard to the order of assignment.
The ground upon which the doctrine of our state, “that different.debts secured by the same mortgage are to be' paid from the mortgage fund in the order in which they fall due,” rests, is this (as stated by Judge Lane in the decision of the Bank v. Covert, 13 Ohio, 240), “ that the obligation to pay the first, may be enforced against the property before any default in the later payments.” Jones in his work on Mortgages, sec. 1699, says substantially the same thing.' “ The rule rests upon the fact that the holder of the note first maturing, may foreclose upon non-payment without waiting for the succeeding notes to mature.” It is conceded that this order may be changed by the agreement of the parties interested, as by a statement in the mortgage, or a stipulation in the’notes themselves, or by some other arrangement, or perhaps by facts or circumstances which would show that the intention of the parties or mortgagee was that this presumption of the law should not apply. But is is expressly held in the Covert case, that the order of assignment of the notes does not change this rule of priority, and in the case of Bushfield v. Myers, 10 Ohio St. 338, our court goes still farther, and contrary to the doctrine of some other courts holds, that even where the mortgagee and payee assigns some of the notes, retaining others, if all of them fall due at the same time, he is entitled to share prorata 'with those assigned', in the mortgage fund; and it would seem to follow, that if the mortgagee retained the note first falling due, he would have priority. See also 11 Ohio St. 616, and 33 Ohio St. 250. And therefore, if Kebler had transferred the $3200 note to Miss Cromwell, before he transferred the other to Mrs. Brinton, we think this would not alter the general rule that the note first maturing'has priority.
Does the fact, then, that Kebler was acting as the' agent of both of these ladies, and actually had invested their money in these notes before the execution of the mortgage, if this be *265 so, entitle Miss Cromwell to share pro rata in these proceeds? This is strongly urged by her counsel, and as stoutly denied by the counsel for Mrs Brinton,, and presents a question concerning which we know of no case in Ohio, though it is claimed that decisions of. the Supreme Court of Indiana favor the doctrine claimed by counsel for plaintiff in error.
The general rule of that state is the same as that of Ohio. Judge Woods, in deciding the case of Shaw v. Neusome, 78 Ind. 335, says, “It is the well settled law of this state, that, if a mortgage be given to secure successive installments of a debt evidenced by promissory notes maturing at different times, the transfer of the notes operates as an assignment pro tanto of the mortgage, and the holde s of the several notes have priority of lien in the order in which their respective demands become due.”
But in this case the court holds, that the same rule does not govern where “a single mortgage is given to secure obligations to different parties maturing at different times.” This is said to be “equivalent to the simultaneous giving of separate mortgages to secure such obligations, and no priority is allowed.” But to this is added the qualification, “otherwise, if the obligations were payable to the same party, and had passed into the hands of different owners,” in which case the general rule would apply.
This is the only case to which we have been referred, which gives this effect to a mortgage executed by a debtor to one person to secure obligations held by different persons, maturing at different times. The three cases cited by the judge delivering the opinion (76 Ind. 75; 63 Ind. 409, and 45 Ind. 355), were all cases in which the mortgage in controversy had been given directly to several persons holding separate claims.
We know of no case in Ohio, on these points, or which states the effect on the priority of the parties, where two or more mortgages, executed to different persons to secure several debts, coming due at different times, are left for record at the same moment of time. In view of the language of the statute (sec. 4133), which provides that mortgages shall take effect from the time the same are delivered to the recorder of the proper county for record, it may be, that such mortgagees *266 might stand on an equality, without reference to the time at which their respective debts matured — if so, it would doubtless be upon the ground, that such is the meaning of that section of the law ; and the mortgages being several and distinct transactions, that there would appear to be nothing to show any. element of agreement on the part of him, who held the note last maturing, that those coming due at an earlier day should be first paid. On this point, however, it is stated in Jones on Mortgages, sec. 607: “Of two mortgages executed at the same time” (in our state left for record at the same time), “ to secure debts which mature at different times, if there be no other ground of priority, according to some authorities, that is the prior lien, which secures the payment of the note which first falls due. The rule is the same as it is when one mortgage secures debts maturing at different times; they are to be paid in the order of their maturing”; which seems opposed to the view taken by the Indiana cases.
The counsel for the deféndant in error claims that the decision of the Supreme Court in Winters v. Bank, 33 Ohio St. 250, practically decides the question in his favor. In that case Bains, having indorsed three series of notes for Lawton & Co. to be given to three different creditors of the firm, three notes in each series, due 18, 30 and 42 months from date, and all dated on the same day, he afterwards took from Lawton & Co. a mortgage to indemnify himself against his liability, and also as trustee for the holders of the notes, to secure their payment. Adolph Wood & Co. were the payees and holders of one of the series of notes. The one first coming due was paid, and they assigned the note next maturing to The Franklin Bank, and the last one to Winters & Son. The only question in the case was whether the Bank’s note which first matured, should be first paid, and it was held that it should. This we understand to be simply an affirmance of the general rule. The court did, however, say in the decision that although Bains, the mortgagee, was a trustee, “ he was a trustee for the parties according to their legal rights.”
There is another view of the case, which may be important, and that is, whether it does not appear from the whole case that at the date of the execution of the mortgage (Feb. 26, *267 1877)) Kebler was himself the owner of bothjof these notes; he having never as yet in,any way transferred them to these parties, or actually invested their m.oney therein. The mortgage recites that the premises described therein, had that day been conveyed by Kebler; to Rankin, and that these notes were given for the purchase money^and in view of all the circumstances, and of the many other strange and unauthorized acts of Kebler with reference to these investments, and the mortgage given by Rankin, which appear in the bill of exceptions, it may be that those notes were, in fact, executed at the date of the mortgage, and dated back to the,13th of February and 2nd of July, 1877, respectively.. This'appears plausible., for the reason that neitherjof those parties was notified of the investment for tthem until after the mortgage was executed, and frpm the,fact that both the notes and mortgage were made directly t.o Kebler, and -nothing appears to show that any one else had any. interest in- them at that time. . If this, was the fact, and Kebler afterwards, concluded to 'invest the money of his client in|those two notes, it would seem clear that.the note of February 14,1877, shouid.be first.paid-
But in view, of the- whole case, a majority of the court is inclined toj-believg,that" the investments- were, made for these parties respectively by -Kebler,. at the dates., of th.e. several notes,-viz, for Miss Cromwell in the' $32.00. note on July.2, 1887, and for?Mrs Brinton in,the. $2975.5.0 note on the' 14th of February, 1887, and that from, those-respective dates, he held such notes as trustee for said parties respectively. That when the mortgage was afterwards given on the 26th day of July toJKebler, it was as trustee for the equitable owners of the notes, and'that. the doctriné-of the case in -78 Indiana applies — and that'it is practically the same as if the mortgage had been-executed by.Rankiri-to Mrs Brinton and -Miss Orórnwel-1, and that the-proceeds of the mortgaged property .should b.e .-divided between- them pro rata.' • ■■ ■
I am of a different Opinion.- I think it'-very doubtful whether anything was done by Kebler, the effect of which was to give either of these' parties any interest in these notes, .until after the execution of the mortgage. It may be .that at that time he intended to'hold them for them, but there is no *268 evidence of this. But even assuming' this to be the case,' the notes-being in' bis name, and the’mortgage being executed to him apparently in his own right and in his own name, there was no reason why he might not have had the mortgage stipulate that one of the notes'.should- have priority over the .other. And though no such provision is, in terms, put into the mortgage, yet it was in effect done, by having one of the notes mature before the other, which in accordance with the ■ well settled principle of law in our state, gave it priority- over that’which matured at a later-day. The Indiana case relied on to establish the doctrine-that where a mortgage is given to one person to secure several debts' owing to different persons, there is no priority between them, expressly'states that this rule would not apply “if the obligations were payable to the,same party, and had passed'into the hands of different owners,” which would seem to exclude its application to this case. And conceding farther, that Kebler at the time of the execution of the mortgage held the notes as trustee for those ■parties, in the language of the judge deciding the case in 38 Ohio St., “ he was a trustee for them according to their legal rights.” And Mrs. Brinton, being'the equitable owner of the note first maturing, is in my opinion entitled tube first paid.
• W. T. McClintich and E. W-. Strong, for plaintiff,in error.
Willy & Wald, for defendant-in error.- ■ '
But in accordance with the opinion of the' majority of the court, the judgment of the court of common pleas will be reversed, and the cause remanded for a-'new trial."